**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs,*
*and the Class*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TAYYAR TANRITANIR, *on behalf of himself, FLSA Collective Plaintiffs, and the Class,*<br><br>Plaintiff,<br><br>v.<br><br>BAYFRUIT CORP. d/b/a SHEEPSHEAD BAY MARKETPLACE, and KENAN OZBAY,<br><br>Defendants. | Case No.:<br><br>**CLASS AND COLLECTIVE ACTION COMPLAINT**<br><br>Jury Trial Demanded |

Plaintiff TAYYAR TANRITANIR ("Plaintiff"), on behalf of himself and others similarly situated, by and through his undersigned attorneys, hereby files this Class and Collective Action Complaint against BAYFRUIT CORP. d/b/a SHEEPSHEAD BAY MARKETPLACE ("Corporate Defendant") and KENAN OZBAY ("Individual Defendant" and together with the Corporate Defendant, "Defendants") and states as follows:

## INTRODUCTION

1. Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 et seq. ("FLSA"), that he and others similarly situated are entitled to recover from Defendants: (i) unpaid wages, including overtime, (ii) liquidated damages, and (iii) attorneys' fees and costs.

2. Plaintiff alleges, pursuant to the New York Labor Law ("NYLL"), that he and others similarly situated are entitled to recover from Defendants: (i) unpaid wages, including overtime, (ii) liquidated damages, (iii) statutory penalties, and (iv) attorneys' fees and costs.

3. Plaintiff further alleges that Defendants breached their contract with Plaintiff and Class Members by failing to pay employer payroll taxes for Plaintiff and Class Members, as required by the Federal Insurance Contribution Act ("FICA"). Plaintiff also alleges that, in retaining those sums for themselves, Defendants unjustly enriched themselves at the expense of Plaintiff and Class Members.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendants are headquartered in this District and because the events giving rise to this action took place in this District.

## PARTIES

6. Plaintiff is a resident of Brooklyn, New York.

7. At all times relevant to this action, Defendants have owned and operated "Sheepshead Bay Marketplace" (the "Marketplace") at 1717 Avenue Z, Brooklyn, NY 11235.

8. Corporate Defendant is a domestic business corporation organized under the laws of the State of New York, with a principal place of business and an address for service located at 1717 Avenue Z, Brooklyn, NY 11235.

9. Individual Defendant KENAN OZBAY is a principal and owner of the Corporate Defendant. KENAN OZBAY exercises operational control as it relates to all employees including Plaintiff, FLSA Collective Plaintiffs, and the Class. KENAN OZBAY frequently visits the Marketplace. KENAN OZBAY exercises the power to (and also delegates to managers and supervisors the power to) fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiff, FLSA Collective Plaintiffs, and the Class. At all times, employees of the Marketplace could complain to KENAN OZBAY directly regarding any of the terms of their employment, and KENAN OZBAY would have the authority to effect any changes to the quality and terms of employees' employment, including changing their schedule, compensation, or terminating or hiring such employees. KENAN OZBAY exercised functional control over the business and financial operations of the Corporate Defendant. KENAN OZBAY had the power and authority to supervise and control supervisors of Plaintiff, FLSA Collective Plaintiffs and Class members, and could reprimand employees.

10. At all relevant times, Corporate Defendant was and continues to be an "enterprise engaged in commerce" within the meaning of FLSA.

11. At all relevant times, Corporate Defendant employed at least fifteen (15) employees within the meaning of FLSA and NYLL.

12. At all relevant times Defendants were Plaintiff's employer within the meaning of NYLL §§ 2 and 651.

13. At all relevant times, Plaintiff was Defendants' employee within the meaning of NYLL §§ 2 and 651.

14. At all relevant times, the work performed by Plaintiff was directly essential to the business operated by Defendants.

## FLSA COLLECTIVE ACTION ALLEGATIONS

15. Plaintiff brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all current and former non-exempt employees (including, but not limited to, drivers, delivery persons, drivers' helpers, stock clerks, departmental clerks, porters, cashiers, among others) that were employed by Defendants on or after the date that is six (6) years before the filing of this Complaint ("FLSA Collective Plaintiffs").

16. At all relevant times, Plaintiff and FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them their proper wages, including overtime premium at one and a half times the regular rate for all hours worked over forty (40) in a workweek. The claims of Plaintiff stated herein are essentially the same as those of FLSA Collective Plaintiffs for: (i) unpaid wages, including unpaid overtime, (ii) liquidated damages, and (iii) attorneys' fees and costs.

17. The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to Section 16(b) of FLSA, 29 U.S.C. § 216(b). FLSA Collective Plaintiffs are readily ascertainable. The number and identity of FLSA Collective Plaintiffs are able to be determined from the records of Defendants. The hours assigned and worked, the positions held, and rates of pay for each FLSA Collective Plaintiff are also determined from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses

are readily available from Defendants. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

**RULE 23 CLASS ALLEGATIONS**

18. Plaintiff brings claims under NYLL and for breach of contract and unjust enrichment pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all current and former non-exempt employees (including, but not limited to, drivers, delivery persons, drivers' helpers, stock clerks, departmental clerks, porters, cashiers, among others) that were employed by Defendants on or after the date that is six (6) years before the filing of this Complaint (the "Class" or "Class Members").

19. At all relevant times, Plaintiff and Class Members are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure to pay all wages owed, including overtime premium at one and a half times the regular rate for all hours worked over forty (40) in a workweek.

20. The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class Member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

21. The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, the facts on which the calculation of that number are

based are presently within the sole control of Defendants, there is no doubt that there are more than forty (40) Class Members in the Class.

22. Plaintiff's claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class or in separate actions. All Class Members were subject to the same corporate practices of Defendants, as alleged herein, of (i) failing to pay overtime compensation, (ii) failing to provide accurate IRS Forms W-2 and to remit the employer's share of FICA taxes on their behalf, (iii) failing to provide proper wage and hour notices, at dates of hiring and annually thereafter, per requirements of NYLL, and (iv) failing to provide proper wage statements, per requirements of NYLL.

23. Defendants' corporate-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class Member. Plaintiff and other Class Members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

24. Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

25. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against a corporate defendant. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the

unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class Members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class Members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

26. Defendants and other employers throughout the country violate their respective states' labor laws. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

27. There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a) Whether Defendants employed Plaintiff and Class Members within the meaning of NYLL;

b) What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not pay Plaintiff and Class Members properly;

c) At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay Plaintiff and Class Members for their work;

d) Whether Defendants paid Plaintiff and Class Members overtime wages for all overtime hours worked;

e) Whether Defendants failed to pay Plaintiff and Class Members overtime premium at one and a half times the regular rate for all hours worked over forty (40) in a workweek;

f) Whether Defendants improperly paid employees without regard to the number of hours worked, including on a fixed basis;

g) Whether Defendants operated their business with a policy of failing to pay Plaintiff and Class Members for all hours worked;

h) Whether Defendants breached the covenant of good faith and fair dealing by failing to remit payroll taxes on behalf of Plaintiff and Class Members;

i) Whether Defendants were unjustly enriched by retaining monies that should have been paid to the IRS on behalf of Plaintiff and Class Members;

j) Whether Defendants provided proper wage statements to Plaintiff and Class Members per requirements of NYLL; and

k) Whether Defendants provided proper wage notices to Plaintiff and Class Members per requirements of NYLL.

## STATEMENT OF FACTS

*Wage and Hour Claims*

28. Plaintiff was employed by Defendants as a produce department driver from in or around June 2016 to in or around April 2026. Plaintiff performed his work for Defendants' Marketplace, located at 1717 Avenue Z, Brooklyn, NY 11235.

29. As a produce department driver, Plaintiff's duties were to drive a truck to pick up produce for the Marketplace. The truck Plaintiff drove belonged to Defendants. Defendants maintained the truck and paid for all expenses associated with it. The truck was kept at a garage on Coyle Street, only ten (10) minutes from the Marketplace, and was under Defendants' control. Plaintiff's workday began when he picked up the truck there.

30. At all relevant times, Plaintiff took direction from Defendants' manager, Utkan Dogan, and Defendants set Plaintiff's workdays and work hours. A helper who accompanied Plaintiff on his deliveries was also paid directly by Defendants.

31. At all relevant times, Plaintiff worked five (5) overnight shifts per week, Monday through Thursday and Sunday. His shifts generally began at 5:00 p.m. or 6:00 p.m. and ended at 9:00 a.m. or 10:00 a.m. the following morning, totaling approximately eighty (80) hours per week on average. FLSA Collective Plaintiffs and Class Members were similarly scheduled to work overtime hours.

32. At all relevant times, Plaintiff was required to work through his meals and to eat while working. Accordingly, the entirety of each shift, including meal periods, constituted hours actually worked by Plaintiff. FLSA Collective Plaintiffs and Class Members were similarly

required to work through their meal breaks, and their meal periods likewise constituted hours worked.

33. Plaintiff never clocked in or out. As a result, Defendants did not keep accurate records of the hours that employees worked.

34. Throughout Plaintiff's employment, he was paid at a fixed rate of two thousand dollars ($2,000) per week, by check, on a weekly basis.

35. At all relevant times, Defendants never paid Plaintiff an overtime premium of one and one-half times his regular rate for hours worked over forty (40) in a workweek, regardless of how many hours he worked. Plaintiff's pay would not change if he worked a greater or lesser number of hours in any given week, and there was never any agreement between Plaintiff and Defendants that Plaintiff's fixed salary compensation would cover Plaintiff's overtime hours worked.

36. Until in or around 2020, Defendants paid Plaintiff's weekly checks directly to him, in his own name, and never paid him overtime. In or around 2020, Defendants further required Plaintiff to create a corporation, "Tay-Tan, Inc.," and issued his weekly checks to that corporation instead, in order to treat Plaintiff as an independent contractor rather than an employee. *See* **Exhibit A**. Whether the checks were made out to Plaintiff or to the corporation, his duties, schedule, and pay structure and amount remained the same.

37. Plaintiff was at all times Defendants' employee. Defendants controlled the days and hours Plaintiff worked, directed his work, owned and maintained the truck he drove, bore the expenses of the truck, and paid the helper at Defendants' expense. Plaintiff made no investment in Defendants' business and had no opportunity for profit or loss, as he was paid the same fixed amount each week. Plaintiff worked for Defendants for approximately ten (10) years, and his work

was an integral part of Defendants' business. Accordingly, Plaintiff was an employee entitled to overtime under FLSA and NYLL.

38. At all relevant times, FLSA Collective Plaintiffs and Class Members were Defendants' employees entitled to overtime under the FLSA and NYLL and there were no agreements that fixed salary would cover their overtime hours. FLSA Collective Plaintiffs and Class Members were similarly not paid an overtime premium of one and one-half times their regular rate for hours worked over forty (40) in a workweek.

39. Defendants knowingly and willfully operated their business with a policy of failing to pay Plaintiff, FLSA Collective Plaintiffs, and Class Members the overtime rate of one and one-half times the regular rate.

*Breach of Contract and Unjust Enrichment Claims*

40. At all relevant times, Defendants paid Plaintiff weekly by check, made payable to the corporation that Defendants required him to create, without withholding or remitting payroll taxes. Class Members were similarly paid without withholding or remittance of payroll taxes and were not treated as employees on Defendants' payroll.

41. As a result, Defendants failed to provide Plaintiff and Class Members with IRS Forms W-2 for all the tax years of their employment and failed to properly record, account for, and report to the IRS all monies paid to Plaintiff and Class Members.

42. When Defendants hired Plaintiff and Class Members, the parties entered into a contract. The covenant of good faith and fair dealing is implicit in every contract under New York law.

43. In violating the Internal Revenue Code by failing to provide W-2 forms, Defendants also breached the covenant of good faith by denying Plaintiff and Class Members the contract's

expected value—specifically, the employer's share of Social Security and Medicare taxes for each employee.

44. Defendants also unjustly enriched themselves at the expense of Plaintiff and Class Members by retaining monies that should have been remitted to the IRS on behalf of Plaintiff and Class Members.

45. As a result, Plaintiff and Class Members will either (1) be liable to the IRS for the employer's share of FICA taxes or (2) upon retirement, suffer from diminished Social Security and Medicare benefits because they did not pay enough into the system.

46. The employer's share of Social Security taxes is 6.2%. The employer's share of Medicare taxes is 1.45%. Accordingly, Defendants must compensate Plaintiff and Class Members 7.65% of all their earnings from Defendants beginning six years prior to the filing of this Complaint.

47. Defendants are liable to Plaintiff and Class Members for failing to pay FICA taxes for the wages earned by Plaintiff and Class Members.

*WTPA Claims*

48. At all relevant times, Defendants failed to provide wage notices and accurate wage statements to Plaintiff and Class Members, in violation of the Wage Theft Protection Act ("WTPA")—incorporated into the NYLL.

49. In failing to provide proper wage statements and notices, Defendants have failed to comply with the law in a manner that entails a concrete harm to an interest identified by the New York State legislature. Following the decision in *Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300, 303 (2d Cir. 2024), courts have generally held that there is no categorical bar on Article III standing for WTPA claims. Instead, the Second Circuit found that "[t]he lack of such notices and statements

might impair 'an employee's ability to seek relief for violations they may not have information about'" to an extent sufficient to support standing.

50. New York Court continue to find sufficient standing to support standing to support these claims. One such Court stated the following at Summary Judgment:

> "Here, the Court determines that Plaintiffs have adequately alleged and established actual and concrete downstream harm as a result of Defendants' failure to provide the required wage and hour notices and wage statements. Plaintiffs have shown that "Defendants' violations impaired their ability to seek relief due to a lack of information." More than that, Plaintiffs have proved, and the Court agrees, that Defendants' failure to maintain proper wage statements because of their automatic meal-break deduction and eight-hour rounding led Plaintiffs to lose wages. These are exactly the types of harm that the Second Circuit considered to be sufficient to establish standing in *Guthrie*. Therefore, the Court finds for Plaintiffs on this issue."

*Sanchez v. Clipper Realty, Inc.*, 2026 U.S. Dist. LEXIS 36716, at *61 (S.D.N.Y. February 23, 2026) (internal citations omitted).

51. Here, Defendants' conduct has led to exactly the kind of injury contemplated in *Guthrie* and *Sanchez.* By failing to inform Plaintiff and Class Members of the actual hours that they worked by not providing them with wage statements, Defendants were able to hide their wrongdoing, as Plaintiff and Class Members were unaware of the fact that they were being underpaid. Had Defendants provided proper wage statements to Plaintiff and Class Members which accurately listed the total number of hours Plaintiff and Class Members actually worked, as required by law, Defendants would have had to either (a) increase the wages to correspond to the hours actually worked or (b) forthrightly acknowledge, by way of the wage statement, that the employee's wages did *not* correspond to the hours the employee actually worked.

52. By failing to report all of Plaintiff's and Class Members' hours, Defendants were able to reduce the employee earnings that they later reported to the IRS, as such information is derived from the information on employees' wage statements. The effect of reporting reduced earnings to IRS is, in turn, to reduce the amount of social security benefits available to the

employee, as an employee's entitlement to benefits reflects how much money he or she is reported as having contributed to the social security system. As a result, Plaintiff and Class Members were irreversibly injured with respect to their Social Security benefits—a fact which Defendants were able to hide from them by failing to provide them with proper wage statements.

53. Furthermore, Defendants failed to provide any wage notices to Plaintiff or Class Members. Once again, had Defendants provided Plaintiff and Class Members with wage notices that communicated the rates that Defendants actually intended to pay them, Plaintiff and Class Members would have been able to contest the unfair pay rates or choose not to take a job with Defendants. Instead, due to Defendants intentional hiding of that information, Plaintiff and Class Members accepted their employments with Defendants without the knowledge that Defendants did not intend to be bound to their promised pay rates.

54. Defendants knowingly and willfully operated their business with a policy of failing to provide Plaintiff and Class Members with wage notices and accurate wage statements, in violation of the NYLL.

55. Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs, and Class members, in this litigation and has agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

## COUNT I

## VIOLATION OF FAIR LABOR STANDARDS ACT

56. Plaintiff realleges and incorporates all the foregoing paragraphs of this Class and Collective Action Complaint as if fully set forth herein.

57. At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of FLSA, 29 U.S.C. §§ 206(a) and 207(a).

58. At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of FLSA.

59. At all relevant times, Corporate Defendant had gross annual revenues in excess of $500,000.

60. At all relevant times, Defendants willfully violated Plaintiff and FLSA Collective Plaintiffs' rights by failing to pay wages in the lawful amount for all hours worked, including those in excess of forty (40) hours worked each week.

61. At all relevant times, Defendants had a policy and practice that failed to pay overtime compensation at the statutory rate of time and one-half to Plaintiff and FLSA Collective Plaintiffs for all hours worked in excess of forty (40) hours per workweek.

62. Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs should be in the possession and custody of Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

63. Defendants knew of and/or showed a willful disregard for the provisions of FLSA as evidenced by their willful failure to compensate Plaintiff and FLSA Collective Plaintiffs their proper wages, including their proper overtime premium, when Defendants knew or should have known such was due.

64. Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under FLSA.

65. As a direct and proximate result of Defendants' willful disregard of FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to FLSA.

66. Due to the intentional, willful and unlawful acts of Defendants, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid overtime, plus an equal amount as liquidated damages.

67. Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

## COUNT II

## VIOLATION OF NEW YORK LABOR LAW

68. Plaintiff realleges and incorporates all the foregoing paragraphs of this Class and Collective Action Complaint as if fully set forth herein.

69. At all relevant times, Plaintiff and Class Members were employed by Defendants within the meaning of the New York Labor Law §§ 2 and 651.

70. At all relevant times, Defendants knowingly and willfully failed to pay Plaintiff and Class Members wages in the lawful amount for all hours worked, including those in excess of forty (40) hours worked each week, in violation of NYLL.

71. At all relevant times, Defendants knowingly and willfully operated their business with a policy and practice of refusing to pay Plaintiff and Class members proper overtime for all hours worked in excess of forty (40) in a workweek at the rate of one and one-half times the regular rate, in violation of NYLL.

72. At all relevant times, Defendants knowingly and willfully operated their business with a policy of not properly notifying employees of their overtime rate, in direct violation of NYLL.

73. At all relevant times, Defendants knowingly and willfully operated their business with a policy of not providing Plaintiff and Class Members proper wage and hour notice, at date of hiring and annually thereafter, in direct violation of NYLL.

74. Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements clearly indicating their overtime rate and all hours worked for each payment issued to Plaintiff and Class Members, as required by NYLL.

75. Due to the Defendants' New York Labor Law violations, Plaintiff and Class Members are entitled to recover from Defendants unpaid overtime, reasonable attorneys' fees, liquidated damages, statutory penalties and costs and disbursements of the action, pursuant to NYLL.

## COUNT III

## BREACH OF CONTRACT

76. Plaintiff realleges and incorporates all the foregoing paragraphs as if fully set forth herein and further alleges as follows.

77. "In New York, all contracts imply a covenant of good faith and fair dealing in the course of performance … This covenant embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract … [T]he duties of good faith and fair dealing … encompass any promises which a reasonable person in the position of the promisee would be justified in understanding were

included [in the contract].” *511 W. 232nd Owners Corp. v. Jennifer Realty Co.*, 98 N.Y.2d 144, 153 (2002).

78. Defendants breached this duty, and consequently the parties’ contract, when they paid Plaintiff’s and Class Members’ wages without withholdings or deductions and without treating them as employees on payroll, and further failed to provide W-2 forms. As a result, Plaintiff and Class members lost part of the benefit of the bargain for which they contracted, including Social Security and Medicare taxes, suffering a loss in the amount of the FICA taxes that Defendants should have, but did not, pay on their behalf.

**COUNT IV**

**UNJUST ENRICHMENT**

79. Plaintiff realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

80. To state a claim for unjust enrichment, a plaintiff must allege that: “(1) the [defendant] was enriched, (2) at [plaintiff’s] expense, and (3) that it is against equity and good conscience to permit the [defendant] to retain what is sought to be recovered.” *Georgia Malone & Co., Inc. v. Rieder*, 19 N.Y.3d 511, 516 (2012) (internal quotations omitted).

81. Defendants were unjustly enriched when they kept for themselves money that should have been paid to the Internal Revenue Service as Defendants’ employer FICA contribution. Such came at the expense of Plaintiff and Class Members because they will either (1) be liable to the IRS for the employer’s share or (2) upon retirement suffer from diminished Social Security and Medicare benefits because they did not pay enough into the system.

82. Accordingly, all sums that Defendants should have paid to the IRS should be disgorged from Defendants and transferred to Plaintiff and Class Members.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself, FLSA Collective Plaintiffs and Class Members, respectfully requests that this Court grant the following relief:

a. A declaratory judgment that the practices complained of herein are unlawful under FLSA and NYLL;

b. An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c. An award of unpaid wages, including overtime wages, due under FLSA and NYLL;

d. Contractual damages for Defendants' failure to keep their promise to abide by the Internal Revenue Code and fund Plaintiff's and Class Members' retirement through FICA contributions;

e. Disgorgement from Defendants of all illegally retained sums that should have gone towards Plaintiff's and Class Members' FICA contributions;

f. An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay proper wages for all hours worked, including overtime compensation for all hours worked over forty (40) per workweek, pursuant to 29 U.S.C. § 216;

g. An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay overtime wages for all hours worked over forty (40) per workweek, pursuant to NYLL;

h. An award of statutory penalties as a result of Defendants' failure to comply with the wage notice and wage statement requirements of NYLL §§ 195(1) and 195(3);

i. An award of pre-judgment and post-judgment interest, costs and expenses of this action together with reasonable attorneys' and expert fees;

j. Designation of Plaintiff as the Representative of FLSA Collective Plaintiffs;

k. Designation of this action as a class action pursuant to F.R.C.P. 23;

l. Designation of Plaintiff as Representative of the Class; and

m. Such other and further relief as this Court deems just and proper.

**JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated: October 27, 2026
New York, New York

Respectfully submitted,

By: */s/ C.K. Lee*

**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, Eighth Floor
New York, New York 10011
Tel.: (212) 465-1188
Fax: (212) 465-1181
*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs,*
*and the Class*